IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHERYL ANN GRUBER,<br>     Plaintiff, | CIVIL ACTION |
| v. | No. 5:11-cv-2188 |
| PPL RETIREMENT PLAN, et al.,<br>     Defendants. | |

**Goldberg, J.**                                                **March 27, 2012**

### Memorandum Opinion

Plaintiff alleges a violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1464, asserting that Defendants incorrectly calculated her benefits under her former husband, Bryn Lindenmuth's retirement plan, referred to as the PPL Retirement Plan ("the Plan"). Specifically, Plaintiff claims that the Qualified Domestic Relations Order ("QDRO") entered into pursuant to her 2005 divorce from Lindenmuth entitles her to a share of his benefits under the Plan's "GP401 Separation Policy" ("Separation Policy").

The parties have filed cross motions for summary judgment. Because we find that the QDRO does not entitle Plaintiff to a portion of the Separation Policy benefit, Plaintiff's motion will be denied and Defendants' motion granted.

**I. Background**

The facts of this case are largely undisputed. Plaintiff was married to Bryn Lindenmuth, who worked for PPL from September 20, 1976, until March 3, 2009. (Def.'s Stat. of Facts ¶ 2.) As a benefit of Mr. Lindenmuth's employment, he participated in an ERISA defined benefit pension plan. (Id., ¶ 3.) In 2005, Plaintiff and Mr. Lindenmuth divorced, and as part of their divorce settlement,

entered into a QDRO that designated Plaintiff as an "Alternate Payee," entitling her to receive a portion of Mr. Lindenmuth's retirement benefits under the Plan. (Id., ¶¶ 4-6.) The QDRO was approved by PPL on July 11, 2005, and provides, in relevant part:

> The Alternate Payee will receive a benefit from the Plan in the form set forth in Paragraph 6, commencing on the date set forth in Paragraph 7, that is <u>the actuarial equivalent of 53% of the present value of Participant's accrued benefit in the Plan determined as of December 20, 2004.</u>
>
> * * * *
>
> For purposes of this Paragraph, the Participant's accrued benefit shall be determined in accordance with the terms of the Plan, including the applicable assumptions for actuarial equivalence as set forth in the Plan, but without taking into account the value of any subsidy in the Plan for early retirement benefits, or any increases or adjustments to Participant's accrued benefit under the Plan following Participant's separation from service.
>
> If payments to the Alternate Payee commence while the Participant is still employed, the payment is to be computed as if the Participant had retired on the date on which payments to the Alternate Payee commence (but taking into account only the value of the benefits actually accrued and not taking into account the present value of any subsidy in the Plan for early retirement benefits). <u>If Participant subsequently retires prior to the attainment of age 65, the amount payable to Alternate Payee shall be recalculated to include 53% of the value of any employer subsidy for early retirement.</u>

(QDRO, ¶ 5, Administrative Record at G000041 (emphasis added).)

A participant's normal "accrued benefit" under the Plan is expressed as a monthly payment beginning at the normal retirement age of sixty-five. (Def. Stat. of Facts, ¶ 12.) The Plan, however, permits participants to begin receiving benefits prior to their normal retirement age, as early as the month following their fifty-fifth birthday. (Id., ¶ 17.) If participants elect to begin receiving their benefits "early," the monthly payment is actuarially reduced to account for the fact that payments

start sooner, and are paid longer.  (Id., ¶ 15.)

Some retirement plans will "subsidize" early retirement benefits in certain circumstances. That is, a participant may begin receiving retirement benefits early and those benefits will be greater than the actuarial equivalent of his or her normal retirement benefits.  See 26 C.F.R. § 1.411(d)-3(g)(6)(v).  The difference between the monthly benefit actually received and the actuarial equivalent of the normal retirement benefit is the value of the "subsidy."  See id.  Where the early retirement benefit equals the normal retirement benefit, it is referred to as "fully subsidized."  See, e.g., Aldridge v. Lily-Tulip, Inc., 953 F.2d 587, 589 (11th Cir. 1992); Walker v. Monsanto Co. Pension Plan, 636 F.Supp.2d 774, 778 (S.D. Ill. 2009).  Otherwise, it is only "partially subsidized."  As discussed in detail below, the Plan at issue contains benefits that subsidize early retirement benefits.

The QDRO permitted Plaintiff to begin receiving her share of the Plan benefits early, without regard to whether her husband had elected to begin receiving benefits or continued to work at PPL. (Def. Stat. of Facts, ¶ 18; QDRO, ¶ 5.)  Under the QDRO, if Plaintiff elected to receive early benefits, her payment would be limited to the actuarial value of the normal retirement benefit that had accrued as of December 20, 2004.  (QDRO, ¶ 5.) However, if Mr. Lindenmuth also retired prior to the age of sixty-five, the QDRO provides that Plaintiff's benefit would be "recalculated to include 53% of the value of any employer subsidy for early retirement."  (Id.)

In August 2006, Mr. Lindenmuth turned fifty-five years old, and Plaintiff elected to begin receiving benefits the following month. (Def. Stat. of Facts, ¶¶ 21-22.)  Plaintiff's monthly payment was equal to 53% of the actuarial equivalent of the normal retirement benefit that Mr. Lindenmuth had accrued as of December 20, 2004.  (Id., ¶ 26.)  She did not receive the value of any subsidy because her husband continued to work for PPL.

In March 2009, Mr. Lindenmuth's employment with PPL was terminated because of a "company-wide reduction in force," and he began receiving retirement benefits. (Def. Stat. of Facts, ¶ 28.) At that time, he was fifty-seven years old and had worked for PPL for thirty-two years. (Id., ¶ 29.) In addition to the actuary equivalent of his accrued normal retirement benefit, Mr. Lindenmuth received two additional benefits under the Plan: a "Schedule B" benefit for retirees with at least twenty years of service, and a benefit under the Separation Policy. Under Schedule B, based solely upon his age and length of employment with PPL, Mr. Lindenmuth was eligible to receive 80.7% of his normal, age sixty-five retirement benefit. (Id., ¶ 30.) Under the Separation Policy, Mr. Lindenmuth was entitled to an enhanced, fully subsidized benefit.

Mr. Lindenmuth therefore received his normal monthly retirement benefit following his termination at age fifty-seven. (Id., ¶ 33.) Because Mr. Lindenmuth began receiving retirement benefits before he turned 65, Plaintiff's payment was recalculated to include 53% of Mr. Lindenmuth's Schedule B subsidy for early retirement. However, the Plan determined that Plaintiff was not entitled to any portion of the Separation Policy under the terms of the QDRO. (Id., ¶ 35.) That decision is the basis of the dispute between the parties.

The Separation Policy provides "benefits to regular, full-time management, professional and administrative employees" who are terminated as a result of an "organizational change," including a facility relocation or closing, a sale or merger, or "other economic reasons." (GP401 Separation Policy, Doc. No. 17-1, p. 1.) Under the Separation Policy, the Vice President of Human Resources determines if such a termination is necessary, and notifies the employees of their termination and potential eligibility for benefits. (Id., pp. 2-4.) In such a circumstance, employees who "execute a separation agreement and general release ("Release"), in a form specified by" PPL are entitled to

benefits under the Separation Policy. These benefits include a certain number of weeks' pay, as well as continuing medical and other insurance benefits. (Id., p. 2.) Additionally, the Separation Policy allows employees who are at least fifty-five years old to receive fully subsidized retirement benefits. (Id., p. 3.) The Separation Policy is incorporated into the Plan under Appendix F.

Plaintiff asserts that she is entitled to a share of Mr. Lindenmuth's Separation Policy benefit under the QDRO. Specifically, she argues that it was an "accrued benefit" as of December 20, 2004, and that it is a "subsidy for early retirement." Defendants maintain that Mr. Lindenmuth's benefit did not accrue until he was terminated from the company and had fulfilled the relevant preconditions necessary to receive a benefit under the policy. Defendants further assert that the benefit is not a "subsidy for early retirement," but rather a separate benefit provided because of Mr. Lindenmuth's termination and conditioned upon his fulfillment of the preconditions set forth in the Separation Policy.

## II.  Standard of Review

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Funk v. CIGNA Group Ins., 648 F.3d 182, 190 (3d Cir. 2011) (quoting Smathers v. Multi-Tool, Inc., 298 F.3d 191, 194 (3d Cir. 2002)). "Where a plan administrator is given discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the appropriate standard of review of the administrator's determinations is an arbitrary and capricious standard." Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 114 (3d Cir. 1994). However, the "plan administrator's construction of [a QDRO], which involved issues of contract

interpretation under the [QDRO] and not the Plan," is subject to de novo review. Id. Because resolution of this dispute entails interpretation of a QDRO, as opposed to the Plan, our review is de novo.

### III. Discussion

Under the QDRO, Plaintiff is entitled to a portion of Mr. Lindenmuth's benefits if such benefits were an "accrued benefit determined as of December 20, 2004," or a "subsidy for early retirement." (QDRO, ¶ 5.) Plaintiff's entitlement to a portion of the Separation Policy therefore depends upon our interpretation of these provisions of the QDRO. Contract interpretation is a matter of law unless the contract is subject to more than one reasonable interpretation.

"For purposes of interpretation, a [QDRO] agreement is treated the same as any other contract under Pennsylvania law." Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994) (citing Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)). The contract is to be interpreted in accordance with "the intent of the contracting parties, as objectively manifested by them." Id. (citing Mellon, 619 F.2d at 1009). Further, the "plain meaning rule of interpretation of contracts [ ] assumes that the intent of the parties to an instrument is 'embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.'" Id. (quoting County of Dauphin v. Fidelity & Deposit Co., 770 F.Supp. 248, 251 (M.D.Pa. 1991)).

With these principles in mind, we consider whether the QDRO entitles Plaintiff to a portion of the Separation Policy either as "an accrued" as of December 20, 2004, or as a "subsidy for early retirement."

### A.   Was The Separation Policy an "Accrued Benefit" as of December 20, 2004

The QDRO entitles Plaintiff to a portion of Mr. Lindenmuth's "accrued benefit" as of December 20, 2004.  Under ERISA, the "definition of 'accrued benefits' imparts a specific meaning of the word accrued, connoting a set periodic increase or accumulation.  Section 3(23) states that an accrued benefit is an individual's benefit 'expressed in the form of an annual benefit commencing at normal retirement age.'" Hoover v. Cumberland, M.D. Area Teamsters Pension Fund, 756 F.2d 977, 981-82 (3d Cir. 1985) (citing 29 U.S.C. § 1002(23)(A)).  Accordingly, as a general matter, "accrued benefits" do not include early retirement benefits.  Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 284 (3d Cir. 1988) ("ERISA specifically refers to normal, rather than early retirement in the context of accrued benefits."); Ashenbaugh v. Crucible, Inc., 1975 Salaried Ret. Plan, 854 F.2d 1516, 1524 (3d Cir. 1988) ("an employee's accrued benefit at any particular point in time is what a fully vested employee would be entitled to receive under the terms of the plan if employment ceased at that particular point in time.").  Benefits under the Separation Policy do not accumulate over time, and are not expressed as a benefit commencing at normal retirement age.  As such, they do not meet the definition of an "accrued benefit" under ERISA.

Plaintiff disagrees and argues that under Bellas v. CBS, Inc., 221 F.3d 517 (3d Cir. 2000), the Separation Policy benefit accrued upon its creation, and was therefore an "accrued benefit" as of December 20, 2004.  Plaintiff's reliance on Bellas is misplaced.  In that case, the United States Court of Appeals for the Third Circuit held that separation policies which provide benefits past the normal age of retirement, such as those provided in the Separation Policy at issue here, are protected by the "anti-cutback" provision embodied in ERISA section 204(g), 29 U.S.C. § 1054(g). The Court found that for purposes of that provision, such benefits "accrue[ ] upon their creation" and are

7

therefore protected by the anti-cutback rule. Id. at 532.

The Third Circuit was clear, however, that its holding and interpretation of "accrued benefit" were limited to the anti-cutback provision. Id. at 523 ("While the definition of an accrued benefit has not been modified, Congress did modify section 204(g) in 1984 to the end that early retirement benefits and retirement-type subsidies were defined as being accrued for purposes of ERISA's anti-cutback provision."). The Court did not abrogate its prior decisions holding that benefits which commence prior to normal retirement age are not "accrued benefits" for purposes other than section 204(g). Id. at 528 n. 9 (In Hlinka, 863 F.2d 279, "we were not concerned with the application of amended section 204(g). Given that the general ERISA definition of accrued benefits is linked to benefits commencing at normal retirement age, our result was clearly appropriate." (internal citations omitted)).

The Court's decision in Bellas therefore concerned specific conduct—amendment to an early retirement benefit—which is not at issue in this case. The Bellas decision did not modify the general definition of "accrued benefit," which continues to be defined as an "annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A). It is this definition, rather than one that applies uniquely for purposes of the anti-cutback rule, that guides our interpretation of the QDRO. Accordingly, we conclude that Plaintiff is not entitled to a portion of the Separation Policy under the clause of the QDRO providing her with a percentage of Mr. Lindenmuth's "accrued benefit in the Plan determined as of December 20, 2004." (QDRO, ¶ 5.)

**B.      Is The Separation Policy a "Subsidy For Early Retirement"**

Under the terms of the QDRO, upon Mr. Lindenmuth's retirement Plaintiff is also entitled to a recalculation of her benefits to include a portion "of the value of any employer subsidy for early

retirement." (QDRO, ¶ 5.)  Therefore, even though the Separation Policy was not an "accrued benefit" as of December 20, 2004, Plaintiff may still be entitled to a portion of the benefit if it is a "subsidy for early retirement."

The QDRO contract language here is clear.  Therefore, its meaning, and whether it encompasses benefits under the Separation Policy, is a matter of law for the court to determine. Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994) (citing In re Stendardo, 991 F.2d 1089, 1094 (3d Cir. 1993)).  We agree with Plaintiff that the Separation Policy provides a "subsidy" to a participant's normal retirement benefits because it allows a participant to receive his full normal retirement benefit prior to reaching normal retirement age without actuarial reduction.  In that sense, it is akin to a "retirement-type subsidy."  See Bellas, 221 F.3d at 538 (defining a "retirement-type subsidy" for purposes of section 204(g) as a "benefit that continues beyond normal retirement age, and is not actuarily (sic) reduced by reason of its payment before the normal retirement age.")

However, the subsidy is not provided "for" early retirement.[1]  Benefits under the Separation Policy are not available "on account of" early retirement.  Rather, such benefits are provided because a participant meets particular preconditions separate from retiring prior to age sixty-five, or due to meeting certain age and length of service requirements.  Under the separation policy, the participant must be terminated by the company for a specific qualifying reason related to organizational restructuring, and must execute "a separation agreement and general release [ ] in a form specified by" the company.  (GP 401 Separation Policy, p. 2.)  The existence of these requirements make it

---

[1] "For" in this context is defined as "because of" or "on account of."  Def. 21, OXFORD ENGLISH DICTIONARY (Online Edition) (last viewed on March 5, 2012).

9

clear that the Separation Policy benefit is provided for reasons entirely separate from early retirement. The benefit is instead provided in conjunction with the participant's termination, and because he has agreed to the terms of separation decided upon by the employer. Under these circumstances, we decline to conclude that the Separation Policy benefit is a "subsidy for early retirement," and accordingly, Plaintiff is not entitled to a portion of this benefit under the QDRO.

**IV.     Conclusion**

For the reasons set forth above, the Court finds as a matter of law that Plaintiff is not entitled to any portion of Mr. Lindenmuth's Separation Policy benefits under the QDRO. Consequently, Defendants' motion for summary judgment will be granted, and Plaintiff's motion for summary judgment will be denied.

Our order follows.